UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
EMMANUEL ST. JEAN,                                   :
                                                     :
                    Plaintiff                        :
                                                     :
        -against-                                    :        **OPINION AND  ORDER**
                                                     :        09-CV-3782 (DLI)(LB)
UNITED PARCEL SERVICE GENERAL                        :
SERVICE CO., and UNITED PARCEL                       :
SERVICE, INC.,                                       :
                                                     :
                    Defendants.                      :
-------------------------------------------------------x
**DORA L. IRIZARRY, United States District Judge:**

Plaintiff Emanuel St. Jean brought the instant complaint against defendants United Parcel

Service General Service Co. and United Parcel Service, Inc. ("UPS"), (collectively,

"Defendants"), alleging that Defendants illegally imposed discipline and supported a hostile

work environment based on Petitioner's race, and in retaliation for Plaintiff lodging complaints

within the company and labor union, and with the National Labor Relations Board ("NLRB")

and Equal Employment Opportunity Commission ("EEOC").  Specifically, Plaintiff claims race

discrimination, hostile work environment and retaliation in violation of: (i) Title VII of the Civil

Rights Act of 1964, 42 U.S.C. 2000e *et seq.*; (ii) the Civil Rights Act of 1866, 42 U.S.C. § 1981

("Section 1981"); (iii) the New York State Human Rights Law ("NYSHRL"), N.Y. Exe. L. § 290

*et seq.*; and (iv) the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-

107, *et seq*.  Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules

of Civil Procedure.[1]  Plaintiff opposes.  For the reasons set forth below, Defendants' motion is

granted in its entirety.

---

[1] In their motion for summary judgment, Defendants claim that some of Plaintiff's claims are
time-barred under certain statutes.  (*See* Brief in Support of Defendant United Parcel Service,
Inc.'s Motion for Summary Judgment ("Def. Mem.") at 10.)  While some claims might be time-

# BACKGROUND

Plaintiff, an African American male, began his employment for Defendants on or around January 2002 as a part-time sorter in Defendants' facility in Maspeth, New York, and was advanced to a full-time sorter position in June 2008. (Plaintiff's 56.1 Statement ("Pl. 56.1") at ¶¶ 6, 9; Defendant's 56.1 Statement ("Def. 56.1") at ¶¶ 6, 9; Certification of Wendy Johnson Lario ("Lario Cert.") Ex. A, May 11, 2010 Deposition of Plaintiff ("Pl. Dep. 1") at 42, 121.) Plaintiff is currently employed as a full-time sorter and has received all contractually agreed raises. (Pl. 56.1 at ¶ 10; Def. 56.1 at ¶ 10.)

## I. Pre-2008 Incidents

In September 2005, Plaintiff's former supervisor, Russell Morrill (Caucasian), verbally reprimanded Plaintiff for taking excessively long breaks in violation of the company's rule providing part-time employees with one 10-minute break and full-time employees with one 15-minute break. (Pl. 56.1 at ¶¶ 18-20; Def. 56.1 at ¶¶ 18-20.) In addition, Morrill suspended Plaintiff for calling in sick and not reporting to work on an unspecified day. (Pl. Dep. 1 at 48.)

At some point prior to 2008, for four consecutive days, Plaintiff wore a t-shirt with the words "[n]agging," "asinine," "incompetent," and "E. coli." written next to each letter of the name "Nicole," which referenced Nicole Rochester, Plaintiff's supervisor at the time. (Def. 56.1 at ¶¶ 13, 14; Pl. 56.1 at ¶¶ 13, 14; Lario Cert. Ex. B, June 8, 2010 Deposition of Plaintiff ("Pl. Dep. 2") 395-402.) Dave McKenna, Division Manager, told Plaintiff to stop wearing the shirt, and the shirt was confiscated. (Pl. Dep. 2 at 399-402.) Management also disciplined Plaintiff for workplace violence and allegedly spitting at a co-worker, which Plaintiff denies. (Def. 56.1 at ¶¶ 15, 17; Pl. 56.1 at ¶¶ 15, 17; Pl. Dep. 2 at 393-95.)

---

barred, others concededly are not. (*See id.*) Accordingly, in the interest of judicial economy, as the court grants Defendants' motion for summary judgment in its entirety based on the merits of the case, it declines to address the timeliness of Plaintiff's claims.

Plaintiff filed two complaints with Defendants' Corporate Help Line in 2005, complaining that his supervisors are harassing him by, among other things, following him into the restroom, singling him out for discipline, and reprimanding him for various issues including excessive bathroom breaks. (Lario Cert. Exs. G, H.) The complaints do not claim that race was the basis for any of the supervisory or disciplinary conduct. (*See id.*) Also, although undocumented in official grievances, Plaintiff also states that Morrill repeatedly referred to Plaintiff as a "parrot," while another supervisor called Plaintiff a "faggot." (Pl. Decl. at ¶ 9.)

## II.  2008 Incidents

### A.  *"15-minute Rule"*

In response to a string of delivery-vehicle thefts at the Maspeth facility, Defendants formalized what is now known as the "15-minute rule," which prohibits employees from remaining at the Maspeth facility for more than 15 minutes after the end of their shift unless they have a legitimate work-related reason to do so. (Lario Cert. Ex. D, June 23, 2010 Deposition of Daniel Daly ("Daly Dep.") at 51-53, 58-59; Lario Cert. Ex. E, June 30, 2010 Deposition of Barry Bragton ("Bragton Dep.") at 58-62.) Although the rule was implemented in the summer of 2008, Plaintiff alleges that Defendant did not issue an official notice of the requirement until October 2008. (Pl. Decl. ¶ 28, Ex. 2; Pl. Dep. 1 at 164).

Plaintiff violated the 15-minute rule on at least six documented occasions, including on: (i) August 28, 2008[2] when Plaintiff clocked out at 3:26 A.M. and reported to the guard booth to exit the facility at 5:05 A.M., (Pl. 56.1 at ¶ 32; Def. 56.1 at ¶ 32; Certification of Micala Campbell Robinson ("Robinson Cert.") Exs. A, G); (ii) August 29, 2008 when Plaintiff clocked

---

[2] Plaintiff's papers incorrectly state that the events occurred on October 28, 2008. (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl. Opp. at 6.) The Compliance Report from defendant's Corporate Help Line indicates that the events occurred on August 28, 2008 and were reported by plaintiff on August 29, 2008. (Lario Cert. Ex. L.)

out at 3:43 A.M. and reported to the guard booth at 4:36 A.M., (Pl. 56.1 at ¶ 35; Def. 56.1 at ¶ 35; Robinson Cert. Exs. A, F; *see also* Pl. Decl. at ¶¶ 42-44); (iii) August 30, 2008 when Plaintiff clocked out at 4:47 A.M. and reported to the guard booth at 5:28 A.M., (Pl. 56.1 at ¶ 38; Def. 56.1 at ¶ 38; Robinson Cert. Exs. A, H); (iv) September 5, 2008 when Plaintiff clocked out at 3:34 A.M. and reported to the guard booth at 4:19 A.M., (Pl. 56.1 at ¶ 41; Def. 56.1 at ¶ 41; Robinson Cert. Exs. B, I); (v) October 11, 2008 when Plaintiff left the facility four hours after clocking out, (Robinson Cert. Ex. C; *see also* Lario Cert. Ex. V at UPS3); and (vi) December 5, 2008 when Plaintiff left the facility two hours after clocking out, (Robinson Cert. Ex. E; Pl. Dep. 1 at 254).

After Plaintiff's first violation, Security Supervisor Gary Depoto (Caucasian), verbally reminded Plaintiff of the 15-minute rule and, upon Plaintiff's subsequent failure to leave the premises, Mr. Depoto called the police who escorted Plaintiff out of the facility without arresting him. (Robinson Cert. Ex. A; Pl. Decl. at ¶¶ 47, 48; Def. 56.1 at ¶¶ 35, 36; Deposition of Gary Depoto ("Depoto Dep.") at 91-92; Certification of Douglas Trandiak ("Trandiak Cert.") ¶ 5.) Although Plaintiff filed grievances alleging "intimidation and harassment" related to Depoto's verbal reprimand and call to the police, Plaintiff did not allege that race was a basis for Depoto's conduct. (Pl. Dep. 1 at 139-40; Lario Cert. Exs. I, J.)

Plaintiff was issued a 72-hour notice of discipline for his second violation of the 15-minute rule. (Pl. 56.1 at ¶ 37; Def. 56.1 at ¶ 37; Lario Cert. Ex. V at UPS3.) Plaintiff subsequently filed grievances that included complaints of harassment based partly on the 72-hour notice of discharge imposed on him. (Lario Cert. Exs. L, M.) Following Plaintiff's third violation of the 15-minute rule, Sort Manager Darnell Pottinger (African American), issued to Plaintiff a second 72-hour notice of violation, including the possibility of discharge. (Def. 56.1

4

at ¶ 39; Pl. 56.1 at ¶ 39; Lario Cert. Ex. V at UPS3; Trandiak Cert. at ¶ 6.) On September 11, 2008, Division Manager Barry Bragton (African American), suspended Plaintiff based on continued non-compliance with the 15-minute rule; however, the Union challenged the suspension and the matter was docketed for arbitration. (Lario Cert. Exs. O at ¶ 29, T; Pl. Dep. 1 at 262-63; Trandiak Cert. ¶ 4.) On October 11, 2008, Plaintiff was issued a second notice of discharge for leaving the facility four hours after clocking out and, on November 19, 2008, Plaintiff received a third notice of discharge. (Lario Cert. Ex. V at UPS3; Robinson Cert. Ex. D.) On December 5, 2008, Plaintiff received a fourth notice of discharge for leaving the facility two hours after clocking out. (Pl. Dep. 1 at 254; Robinson Cert. Ex. E; *see also* Def. 56.1 at ¶ 46; Pl. 56.1 at ¶ 46.)

Several other UPS employees violated the 15-minute rule and were disciplined; however, they eventually complied. These employees include: Thomas Brooks (African American); Keston Dick (African American); Philip Martorana (Caucasian); John Mendez (Hispanic); William Lay (Caucasian); and Christopher Williamson (African American). (*See* Bragton Dep. at 112-113; Daly Dep. 61; Pl. Decl. at ¶ 37; Robinson Cert. Exs. D, E, J, K; Trandiak Cert. ¶¶ 18, 23, 24, 26, 32, 34.)

*B. Guard Booth Incident*

Defendants employ a "Clean In/Clean Out" Policy for employees who work inside the Maspeth facility, which requires those employees to pass through a metal detector upon arrival to and departure from the facility. (Pl. 56.1 at ¶ 64; Def. 56.1 at ¶ 64; Lario Cert. Ex. Q; Robinson Cert. Ex. M.) If an employee sets off the metal detector, the employee is instructed to sit on a bench and remove his or her shoes for a secondary inspection. (Pl. Dep. 2 at 338; Robinson Cert.

Ex. M.)  Employees who work on the outside, such as Drivers, are not subject to the same security policy.  (Def. 56.1 at ¶ 65; Lario Cert. Ex. Q.)

In November 2008, Plaintiff set off the metal detector while exiting the facility, so Security Supervisor David McGinnis (Caucasian) instructed Plaintiff to remove his shoes. (Pl. Dep. 2 at 338; Robinson Cert. Ex. M.)  Plaintiff did not comply, and claims that he requested the presence of a Shop Steward to which McGinnis responded, "No shop steward . . . . You either take off your shoes or you could leave and you'll lose your job."  (Pl. Dep. 2 at 338-39.) Plaintiff waited approximately 25 minutes before Shop Steward Martorana arrived of his own accord, at which time Plaintiff submitted to a second wand test and was allowed to leave the guard booth.  (Declaration of Sandra D. Parker in Opposition to Defendants' Motion for Summary Judgment ("Parker Decl.") Ex. 10; Pl. Dep. 2 at 345.)

As Plaintiff was leaving, Martorana heard McGinnis state, "[t]hat guy right there is a piece of shit."  (Pl. 56.1 at ¶ 72; Def. 56.1 at ¶ 72; Pl. Dep. 2 at 345-46.)  Plaintiff filed a complaint with the Corporate Help Line regarding McGinnis's unprofessional conduct, denial of shop steward representation, and reference to Plaintiff as a "piece of shit."  (Pl. Dep. 2 at 345-46.)  Management met with McGinnis, who wrote a statement acknowledging his poor judgment and conduct, and placed the statement in his personnel file.  (Pl. 56.1 at ¶ 73; Def. 56.1 at ¶ 73; Daly Dep. at 99-101, 104.)  Plaintiff filed a grievance regarding McGinnis's refusal to provide Plaintiff representation when he requested a shop steward after being asked to take off his shoes at the guard booth.  (Lario Cert. Ex. R; *see also id.* Ex. S; Robinson Cert. Ex. M.)

*C.  Cell Phone Incident*

Plaintiff alleges that on or around November 2009, he was asked by a supervisor to put his cellular phone away even though Jenny Martinez, a Hispanic employee, was not required to

do the same. (Pl. Dep. 1 at 71.) Plaintiff claims that he asked the supervisor whether Martinez would be held to the same standard, upon which Martinez "just started berating" Plaintiff and called him the "n-word." (Pl. Dep. 1 at 69-70; Parker Decl. Ex. 6.) Plaintiff asserts that, after he entered the office of Shannon Williams (African American) to request security, Martinez entered the office and said "this ['n-word'] is talking shit about me." (Pl. Dep. 1 at 69-70; Parker Decl. Ex. 6; Trandiak Cert. at ¶ 9.) Plaintiff reported the incident to Security and the Union through a written statement, but he alleges that there is no formal grievance on file. (*Id.* at 73.) Ms. Martinez denies having used the "n-word" and witnesses to the incident stated that she did not use that word. (Pl. 56.1 at ¶ 77; Def. 56.1 at ¶ 77; Lario Decl. Ex. C, July 7, 2010 Deposition of William Leanues ("Leanues Dep.") at 71-74.) After an investigation, no disciplinary measures were taken against Ms. Martinez because there was no confirmation of Plaintiff's allegation. (*See* Leanues Dep. at 71-74.)

*D. Other Grievances*

On August 27, 2008, Plaintiff clocked-out and reportedly saw non-union members completing Union work, in violation of Defendants' Collective Bargaining Agreement ("CBA"). (Pl. Decl. at ¶¶ 31, 32.) Plaintiff inquired whether he could perform the work, and also what the names were of the workers so that he could file a proper Union grievance. (*Id.* at ¶ 32.) During the inquiry, Depoto allegedly approached Plaintiff and questioned him in order to find out if he was adhering to the 15-minute rule. (*Id.* at ¶¶ 32, 33, 34.) Depoto then called Shop Steward Keston Dick (African American) and informed Plaintiff that he was being issued a 72-hour notice of discipline. (*Id.* at ¶ 34.) However, after Dick challenged the discipline, Depoto withdrew the threat and reminded Plaintiff of the 15-minute rule. (*Id.*.) As a result of this incident, Plaintiff filed a grievance form, alleging that "Mike Shaft and [G]ary [Depoto]

conspired to intimidate and harass [Plaintiff] and keep [Plaintiff] from exercising [his] contractual right to a grievance." (Lario Cert. Ex. L.)

Plaintiff also claims that, on August 28, 2008, Depoto commented on Plaintiff's work, stating "[l]ook at that handling. Who's better than you, nobody[]" or alternatively making cowboy sounds. (Pl. Decl. at ¶ 40.) Later, Plaintiff was summoned to a meeting with Supervisor Stalyn Lopez, Depoto, Harrington, and Martorana. (*Id.* at ¶ 43; *see also id.* at ¶¶ 41, 42, 44.) Depoto accused Plaintiff of leaving his post without permission for five minutes between 1:34-1:39AM and sought to impose discipline on Plaintiff for "job abandonment" and "theft of company time." (*Id.* at ¶¶ 43, 44, 45.) Plaintiff admits to using the restroom at that time, but claims that he followed standard procedure for the situation because he could not locate Lopez, his supervisor, to request permission. (Pl. Decl. at ¶ 41, 42.)

On August 29, 2008, Full-time Supervisor Eric Harrington (Caucasian), could not locate Plaintiff in his work area, so he requested assistance from Depoto, who searched the building and discovered Plaintiff in the bathroom. (Depoto Dep. at 92-93; Daly Dep. at 30-32; Bragton Dep. at 101-103; Tandiak Cert. at ¶ 8; *see also* Pl. Decl. at ¶¶ 41-45.) Harrington issued Plaintiff a 72-hour notice of discipline for job abandonment and stealing company time. (Pl. 56.1 at ¶ 59; Def. 56.1 at ¶ 59.) Plaintiff filed a report with the Corporate Help Line regarding this incident. (Lario Cert. Ex. L.) Defendants claim that Plaintiff took excessively long restroom breaks, ranging from 20-25 minutes in certain instances. (Def. 56.1 at ¶ 56; Pl. 56.1 at ¶ 56; *see also* Pl. Dep. 1 at 89-91.) Other supervisors such as Patrick Piteo (Caucasian) and Williams also attempted to discipline Plaintiff for similar reasons. (Def. 56.1 at ¶ 60; Pl. 56.1 at ¶ 60; Pl. Dep. 1 at 90-91, 93, 98-99; Lario Cert. Exs. U, V, W; Trandiak Cert. ¶¶ 9, 17.)

On or about September 26, 2008, Plaintiff was accused by Harrington of using earphones in violation of UPS policy. (Pl. Decl. at ¶ 58.) Plaintiff claims that he complied with Harrington's request to remove an earphone, but that Harrington ignored the equivalent earphone use by other employees. (*Id.*) Plaintiff claims that Depoto was present during the incident and threatened to take away Plaintiff's phone rights. (*Id.* at ¶¶ 59, 60.)

On November 21, 2008, Plaintiff was summoned to a meeting, attended by Depoto, Williams, Martorana, and Sort Manager Darnell Pottinger (African American), at which he was asked to report his knowledge of an altercation between two UPS employees. (*Id.* at ¶¶ 64, 65.) Plaintiff stated he had no knowledge of the incident. (*Id.* at ¶ 65.) On November 25, 2008, after again denying knowledge of the incident, Daly placed Plaintiff on notice of discharge for lying. (*Id.* at ¶ 66.) On October 5, 2009, Plaintiff was scheduled for arbitration of his notices of discharge relating to the alleged lying incident and 15-minute rule violations; however, in lieu of arbitration, Plaintiff agreed to and served a one-day suspension to settle the pending notices of discharge. (*Id.* at ¶ 73.)

*E. NLRB and EEOC Charges*

On November 19, 2008, Plaintiff submitted an intake questionnaire to the EEOC in which he reported that, on August 27, 2008, he was harassed by his supervisors for inquiring about the non-union workers performing Union work, and on August 28, 2008, he was followed into the bathroom by Depoto, denied his right to Union representation and escorted off the premises by police. (Lario Cert. Ex. P; *see also* Robinson Cert. Exs. Q, R; Parker Decl. Ex. 4.) Plaintiff also alleged in his report that the enforcement of the 15-minute rule was discriminatory and that "Tomas Brooks," an African American male, and Martorana, a Caucasian male, were

treated the same as Plaintiff except police were never called to escort them out of the Maspeth facility.  (Lario Cert. Ex. P.)

On November 24, 2008, Plaintiff filed a charge with the NLRB alleging that, on or about August 27, 2008, Depoto engaged in unlawful conduct including preventing Plaintiff from performing Union work, harassing Plaintiff by calling the police, and issuing Plaintiff notices of discipline and discharge.  (*Id.* Ex. N.)

## DISCUSSION

### I.      Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Id*.  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party, however, may not rely on "[c]onclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.,* 156 F. 3d 396, 400 (2d Cir. 1998), but must affirmatively "set out specific facts showing a genuine issue for trial," FED. R. CIV. P. 56(e).  "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper."  *Gallo v. Prudential Residential Servs., Ltd. P'ship.*, 22 F. 3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Cont'l Group, Inc.*, 859 F. 2d 1108, 1114 (2d Cir. 1988)).

## II.     Title VII Race Discrimination Claim

### A.  Legal Standard

Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  To prevail against a motion for summary judgment in a discrimination case, the claimant must satisfy the three-part burden-shifting test laid out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  "[A] plaintiff first bears the minimal burden of setting out a *prima facie* discrimination case."  *McPherson v. New York City Dept. of Educ.*, 457 F. 3d 211, 215 (2d Cir. 2006) (citations and internal quotation marks omitted).  To establish a *prima facie* case of race discrimination, a plaintiff must demonstrate that: (1) he was a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.  *Collins v. N.Y. City Trans. Auth.*, 305 F. 3d 113, 118 (2d Cir. 2002).

> A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment.  To be materially adverse[,] a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities.  A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.

*Galabya v. New York City Bd. of Educ.*, 202 F. 3d 636, 640 (2d Cir. 2000).

A plaintiff may raise an inference of discrimination by showing that the employer treated the plaintiff less favorably than employees outside the plaintiff's protected group, who are similarly situated to the plaintiff in all material respects.  *Graham v. Long Island R.R.*, 230 F. 3d

34, 39-40 (2d Cir. 2000). If the plaintiff successfully establishes a *prima facie* case, the plaintiff "is then aided by a presumption of discrimination unless the defendant proffers a legitimate, nondiscriminatory reason for the adverse employment action, in which event, the presumption evaporates and the plaintiff must prove that the employer's proffered reason was a pretext for discrimination." *McPherson*, 457 F. 3d at 215.

Although "[t]he Second Circuit has stated that district courts should be particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question," summary judgment in such a case may still be warranted if the plaintiff relies "on conclusory allegations of discrimination and the employer provides a legitimate rationale for its conduct." *Figueroa v. New York Health and Hospitals Corp.*, 500 F. Supp. 2d 224, 227-28 (S.D.N.Y. 2007) (internal citations and quotation marks omitted); *see also Drummond v. IPC Intern., Inc.*, 400 F. Supp. 2d 521, 528 (E.D.N.Y. 2005) ("[T]o rebut an employer's proffered non-discriminatory rationale for its actions and withstand summary judgment, a plaintiff must present more than allegations that are conclusory and unsupported by evidence of any weight.") (citation and internal quotation marks omitted). "This is because, as the Second Circuit has stated, '[t]he summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion.'" *Id.* at 228 (quoting *Meiri v. Dacon*, 759 F. 2d 989, 998 (2d Cir. 1985)).

*B. Analysis*

Here, Plaintiff fails to establish a *prima facie* case of discrimination because he fails to demonstrate that he suffered an adverse employment action, other than, perhaps, the one-day suspension in 2008, or that the disciplinary actions taken against Plaintiff by Defendants occurred under circumstances giving rise to an inference of discrimination. Plaintiff concedes

that he is still employed by Defendants, has not been transferred from his position and has received all contractually guaranteed raises. (Pl. 56.1 at ¶ 10; Pl. Dep. 1 at 124.) Merely receiving warnings and other disciplinary notices, especially for behavior that violated company rules, does not constitute "a change in working conditions [that is] more disruptive than a mere inconvenience." *See Galabya*, 202 F. 3d 636; *Mark v. Brookdale Univ. Hosp.*, 2005 WL 1521185, at *19 (E.D.N.Y. June 22, 2005) ("[D]isciplinary notices, threats of disciplinary action and excessive scrutiny generally do not constitute adverse employment actions."). The other actions Plaintiff complains of – having to take his shoes off in a guard booth on a rainy day, (*see* Pl. Dep. 2 at 338, 344; Robinson Cert. Ex. M), being called a "piece of shit," (*see* Pl. 56.1 at ¶ 72; Def. 56.1 at ¶ 72; Pl. Dep. 2 at 345-46), being called the "n-word," (*see* Pl. Dep. at 69-70; Parker Decl. Ex. 6), and being investigated for theft of company time, (*see* Pl. Decl. at ¶¶ 43, 44, 45) – also do not constitute adverse employment actions. *See Sank v. City Univ. of New York*, 219 F. Supp. 2d 497, 503 (S.D.N.Y. 2002) ("[N]ot everything that makes an employee unhappy is an actionable adverse action."). Thus, Plaintiff has not suffered any adverse employment action other than, arguably, the one-day suspension Plaintiff agreed to as settlement of two disciplinary charges that had been pending against him since 2008.

However, even if the one-day suspension constitutes an adverse employment action, Plaintiff does not establish an inference of discrimination as to the suspension, which was agreed to by Plaintiff in order to settle several disciplinary charges. *See Jenkins v. New York State Banking Dep't*, 2010 WL 2382417, at *8-10 (S.D.N.Y. Jun. 14, 2010) (finding a five-day suspension negotiated by the union, among other penalties, was insufficient to establish an inference of discrimination). Plaintiff does not provide any factual allegations to support a

finding that the suspension was in any way based on Plaintiff's race.[3]  Accordingly, Plaintiff fails to demonstrate a *prima facie* case of race discrimination.

Even if Plaintiff could make out a *prima facie* case of racial discrimination, Defendants have met their burden of demonstrating legitimate, non-discriminatory reasons for imposing scrutiny and disciplinary charges on Plaintiff.  *See Mark*, 2005 WL 1521185 at *27 ("Unsatisfactory job performance is a legitimate nondiscriminatory ground for discipline," including suspension of the plaintiff).  The instant record gives no indication that Plaintiff received reprimands or discipline from his superiors for any reason other than to address his misconduct.  Indeed, Plaintiff does not deny that he violated the 15-minute rule by staying on the work premises for more than 15 minutes after clocking out, (*see* Def. 56.1 at ¶ 35, 38; Pl. 56.1 at ¶¶ 35, 38), took bathroom breaks in addition to his contractually guaranteed break, (*see* Pl. 56.1 at ¶¶ 20, 56), or wore the t-shift containing offensive phrases regarding his female superior, (Pl. 56.1 at ¶¶ 13, 14).

---

[3] The court also notes that Plaintiff fails to demonstrate that any of the other disciplinary actions taken against him by Defendants occurred under circumstances giving rise to an inference of discrimination.  Plaintiff's conclusory statements that non-African American employees were treated differently than Plaintiff are insufficient to establish an inference of discrimination.  (*See* First Am. Compl. ¶¶ 29, 31); *Holcomb v. Iona College*, 521 F. 3d 130, 137 (2d Cir. 2009) ("[e]ven in the discrimination context . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment") (citation omitted).  Moreover, Shop Steward Martorana's assertions that Defendants enforced the 15-minute rule differently according to job title, and selectively against only 10 out of 500 individuals, fail to raise an inference of discrimination because job classification is not a protected class.  *See Clemente v. N.Y. State Div. of Parole*, 684 F. Supp. 2d 366, 373 (S.D.N.Y. 2010) ("Employer discrimination . . . based on . . . non-enumerated factors, including union membership, will not support a claim under Title VII).  Also, Martorana's allegation of selective enforcement does not suggest racial bias as the disciplined individuals are of various races.  (*See* Martorana Decl. at ¶ 10.)  Furthermore, Plaintiff fails to demonstrate the existence of "similarly situated" employees who were treated differently from himself.  Even if Plaintiff's allegations as to employees Bill Groll, Bill Lay and John Mendez, whom he alleges violated the 15-minute rule without consequences, (*see* Pl. Decl. at ¶¶ 27, 30, 36; Pl. Dep. 1 at 115-17), were sufficient to show that they were similarly situated to Plaintiff and to establish an inference of discrimination, Plaintiff's claims would still fail for the reasons discussed in this Section.

Plaintiff has not rebutted these legitimate reasons with factual allegations that in any way indicate Defendant acted with a discriminatory motive. *See McPherson*, 457 F. 3d at 216 ("In a discrimination case . . . we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what *motivated* the employer.") (citations and quotation marks omitted); *Forrester v. Rauland-Borg Corp.*, 453 F. 3d 416, 418 (7th Cir. 2006) (With respect to pretext, "the question is never whether the employer was mistaken, cruel, unethical, out of his head, or downright irrational in taking the action for the stated reason, but simply whether the stated reason *was* his reason: not a good reason, but the true reason."). Accordingly, Plaintiff's race discrimination claim pursuant to Title VII fails as a matter of law.

## III.     Title VII Hostile Work Environment Claim

### A.  Legal Standard

Title VII protects individuals from being subjected to a "discriminatorily hostile or abusive environment" in the workplace. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation omitted). A work environment is "discriminatorily hostile" when (1) "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," *id.* (internal citations and quotation marks omitted), and (2) "a specific basis exists for imputing the conduct that created the hostile environment to the employer," *Schwapp v. Town of Avon*, 118 F. 3d 106, 110 (2d Cir. 1997) (citations and quotation marks omitted). This standard for assessing a hostile work environment claim has both "objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Alfano v. Costello*, 294 F. 3d 365, 373 (2d Cir. 2002) (quoting

*Harris*, 510 U.S. at 21).  The "mere utterance of an . . . epithet which engenders offensive feelings in an employee . . . is beyond Title VII's purview."  *Harris*, 510 U.S. at 21 (internal citations and quotation marks omitted).  Furthermore, the hostility must arise from the plaintiff's membership in a protected class.  *See Forts v. City of New York Dept. of Corr.*, 2003 WL 21279439, at *4 (S.D.N.Y. June 4, 2003) ("An environment that would be equally harsh for all workers, or that arises from personal animosity, is not actionable under the civil rights statutes.") (citations omitted).

In order to establish a hostile work environment, "the plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of h[is] working environment."  *Cruz v. Coach Stores, Inc.*, 202 F. 3d 560, 570 (2d Cir. 2000) (citation and internal quotation marks omitted).  When evaluating a hostile work environment claim, the court must look at the totality of the circumstances and may consider factors such as "the frequency of the discriminatory conduct; its severity; whether [the conduct] is physically threatening or humiliating, or a mere offensive utterance; whether it unreasonably interferes with an employees' work performance[;]" and what, if any, psychological harm resulted.  *Harris*, 510 U.S. at 23.

*B.  Analysis*

Plaintiff contends that multiple incidents involving allegedly abusive comments, managerial discipline and close supervision rise to the level of a hostile work environment.  In particular, Plaintiff claims that the following incidents spanning from 2005 to 2009, are sufficient to create a hostile work environment: (1) in November 2005, Plaintiff alleges that Supervisor Russell Morrill "repeatedly" referred to Plaintiff as a "parrot," while another unnamed supervisor referred to Plaintiff as a "faggot," (Pl. Decl. at ¶ 9); (2) in October 2008,

Plaintiff alleges that Security Supervisor Depoto criticized Plaintiff's work by either stating, "[l]ook at that handling. Who's better than you, nobody[]" or making "cowboy sounds," (Pl. Decl. ¶ 40); (3) in November 2008, Plaintiff claims that Security Supervisor David McGinnis called him a "piece of shit," (Pl. 56.1 at ¶ 72; Def. 56.1 at ¶ 72; Pl. Dep. 2 at 345-346); and (4) in January 2009, Jenny Martinez allegedly used of the "n-word" to refer to Plaintiff, (Parker Decl. Ex. 6; Pl. Dep. 1 at 69-70).

Not only do these specific incidents, with the exception of the use of the "n-word," not appear to be based on race, but they are not so frequent as to compel the court to view them as permeating the workplace. *See Schwapp*, 118 F. 3d at 110 ("[I]nstead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments.") (citations and internal quotation marks omitted); *Snell v. Suffolk Cnty.*, 782 F. 2d 1094, 1103 (2d Cir. 1986) ("Casual comments, or accidental or sporadic conversation, will not trigger []relief pursuant to [Title VII]."); *Wilson v. Consol. Edison Co. of N.Y., Inc.*, 2000 WL 335733, at *6 (S.D.N.Y. Mar. 30, 2000) ("[W]here claims are based on racist comments or slurs, a plaintiff must show more than a few isolated incidents of racial enmity . . .[, and] plaintiff's allegations of isolated encounters that were not definitively discriminatory do not amount to severe and pervasive conduct.").

Furthermore, neither the close supervision nor the discipline administered by Defendants rises to the level of creating a hostile work environment. The conduct Plaintiff alleges as hostile is merely the disciplinary action taken by Defendants in response to Plaintiff's violations of various workplace policies. Moreover, Plaintiff has not alleged that he was physically threatened, and he has failed to describe if or how the conduct in question unreasonably interfered with his work. Referring to Plaintiff with crude names understandably may have "engender[ed] offensive feelings," but the comments do "not significantly affect the conditions

of employment to implicate Title VII." *Harris*, 510 U.S. at 21; *Dorrilus v. St. Rose's Home*, 234 F. Supp. 2d 326, 335 (S.D.N.Y. 2002) (calling plaintiff "El Negro" deemed insufficiently severe for hostile work environment claim). Beyond conclusorily stating in the amended complaint that he suffered from embarrassment, humiliation, and anguish, (*see* First Am. Compl. ¶¶ 28, 37, 44, 45, 51, 56), Plaintiff has failed to provide any factual allegations in support of his claim, let alone any "concrete or expert evidence of psychological harm or witnesses to the alleged incidents that could attest to [his] level of humiliation," *Dorrilus*, 234 F. Supp. 2d at 335 (citation and internal quotation marks omitted).

Thus, after considering the totality of the circumstances and construing all the facts in Plaintiff's favor, the court concludes that no reasonable juror could find a hostile work environment based on race existed here. Accordingly, Defendants' summary judgment motion with respect to Plaintiff's Title VII hostile work environment claim is granted.

## IV. Title VII Retaliation Claim

### A. Legal Standard

Title VII prohibits an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Retaliation claims under Title VII are analyzed under the *McDonnell Douglas* burden-shifting test described above. *See Coffey v. Dobbs Intern. Servs., Inc.*, 170 F. 3d 323, 326 (2d Cir. 1999). To establish a *prima facie* case of retaliation, plaintiff must show "(1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Richardson v. Comm'n on*

*Human Rights & Opportunities*, 532 F. 3d 114, 123 (2d Cir. 2008) (citation and internal quotation marks omitted). To demonstrate an adverse action in a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context[, unlike Title VII's substantive provision,] means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006) (citations and internal quotation marks omitted). With respect to the causation element, a causal connection may be established by showing that the retaliatory action occurred close in time to the protected activity. *See Hunter v. St. Francis Hosp.*, 281 F. Supp. 2d 534, 547 (E.D.N.Y. 2003).

    *B. Analysis*

    Here, Plaintiff alleges that Defendants' close monitoring of his activities and the disciplinary actions taken against him by Defendants, constitute retaliation for making complaints to the union, Corporate Help Line, NLRB and EEOC. (First Am. Compl. at ¶ 34; *see also* Lario Cert. Exs. G, H, I, J, L, M, N, P, R, S; Robinson Cert. Ex. M.) However, Plaintiff's recorded and written complaints with the union, Corporate Help Line and NLRB, did not state that race was the basis for the alleged discrimination. Instead, the 2005 complaints report dissatisfaction with verbal reprimands and scrutiny during restroom breaks, (Lario Cert. Exs. G, H), and the 2008 complaints report disagreements regarding enforcement of the 15-minute rule and the "unprofessional" or "antagonistic manner" of UPS employees, (Lario Cert. Exs. I, J, L, M, N, R, S; Robinson Cert. Ex. M). These complaints do not specify any protected conduct and, thus, do not constitute protected activity. *See Clemente v. N.Y. State Div. of Parole*, 2004 WL 1900330, at *13 (S.D.N.Y. Aug. 24, 2004) (grievances that do not allege discrimination do not constitute protected activity under Title VII for purposes of a retaliation claim.) Although

Plaintiff's complaint to the EEOC alleges discrimination based on race and, thus, constitutes protected activity that was known to Defendants as of February 2009, Plaintiff still fails to establish a *prima facie* case for the reasons discussed below. (*See* Pl. 56.1 at ¶ 79 (neither confirming nor denying that Defendants did not receive notice of Plaintiff's EEOC complaint filed November 2008 until February 2009).)

Contrary to Plaintiff's assertions, (*see* Pl. Opp. at 18-19), merely arguing that his supervisors were "harassing him," and that he was being "singled out" and treated "unfairly," in no way creates an inference that the behavior was based on race. *See Int'l Healthcare Exch., Inc. v. Global Healthcare Exch.*, *LLC*, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007) ("[A]mbiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity."). Accordingly, there is no reason to impute to Defendants any consciousness of an unstated racial premise underlying the harassing conduct described.[4] (*See* Def. 56.1 at ¶ 79); *see also Rommage v. MTA Long Island R.R.*, 2010 WL 4038754, at *14 (E.D.N.Y. Sept. 30, 2010) ("Because the statements displayed no obvious reference to race or gender and plaintiff's letter addressed harassment generally, but did not mention gender or race discrimination or harassment, there is no reason to impute to defendant any consciousness of an unstated race or gender premise underlying the harassing conduct described."); *Inganamorte v. Cablevision Sys. Corp.*, 2006 WL 2711604, at *16 (E.D.N.Y. Sept. 21, 2006) (defendant could not have been aware of Plaintiff's complaint of gender discrimination because the complaint

---

[4] Plaintiff also points to a series of complaints filed by other African American employees to show a history of discrimination, and contends that Defendants "assigned to [Security Supervisor] Depoto the task of harassing plaintiff." (*See* Pl. Opp. at 15; Parker Decl. Exs. 11-14.) However, "the mere fact that the [person or people] making the complaints [were] African American will not convert an ordinary complaint into a complaint of racial discrimination sufficient to put the employer on notice of such discrimination." *Aspilaire v. Wyeth Pharm., Inc.*, 612 F. Supp. 2d 289, 310 (S.D.N.Y. 2009).

failed to state or imply that "gender has anything to do with her objections"); *see also Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F. 3d 276, 292 (2d Cir. 1998) ("[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that [the employer] understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII.").

In addition, Plaintiff has failed to allege an employment action taken by Defendants that disadvantaged him. Plaintiff is still employed, has not been transferred, has received all contractual promotions and raises, and any disciplinary action taken against him was based on violations of company rules. *See Chan v. N.Y.U. Downtown Hosp.*, 2006 WL 345853, *8-*9 (S.D.N.Y. Feb. 14, 2006) (granting summary judgment for defendant in retaliation claim where plaintiff was "not terminated, demoted, denied a promotion or given a lesser title or responsibilities, nor did she suffer a decrease in her pay or benefits.") No reasonable employee would be deterred from complaining to the EEOC, the courts and their employers, based on the disciplinary action taken against Plaintiff here other than, perhaps, the negotiated one-day suspension. *See White*, 548 U.S. at 68-69.

Even assuming the negotiated one-day suspension equates to an adverse employment action, Plaintiff fails to establish a causal connection between the EEOC complaint and the suspension. Although a causal connection "can be established indirectly by showing that the protected activity was closely followed in time by the adverse action," *Reed v. A.W. Lawrence & Co., Inc.*, 95 F. 3d 1170, 1178 (2d Cir. 1996) (citation and internal quotation marks omitted), "the cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close," *Cunningham v.*

*Consol. Edison Inc.*, 2006 WL 842914, at *19 (E.D.N.Y. Mar. 28, 2006) (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74, (2001) (internal quotation marks omitted)).  District courts in the Second Circuit "have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation."  *Garrett v. Garden City Hotel, Inc.*, 2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19, 2007) (citations omitted).  Thus, here, the seven-month period between February 2009, when Defendants received notice of the EEOC charge filed by Plaintiff in November 2008, (*see* Def. 56.1 at ¶ 79), and October 2009, when Plaintiff received a suspension for his conduct that occurred prior to the date of the EEOC filing, does not establish a causal connection.  *See e.g. Hollander v. Amer. Cyanamid Co.*, 895 F. 2d 80, 85-86 (2d Cir. 1990) (upholding district court's grant of summary judgment on a retaliation claim where there was only three months between the protected activity and the termination, and the plaintiff submitted no other evidence of a causal nexus); *Garrett*, 2007 WL 1174891 at *20-21 (holding that, in the absence of other evidence of the defendant's retaliatory motive, a two and one-half month interval between the plaintiff's most recent complaint of racial discrimination and her discharge "precludes a finding of a causal connection between the protected activity and the adverse employment action"); *Cobian v. New York City*, 2000 WL 1782744, at *18 (S.D.N.Y. Dec. 6, 2000), *aff'd* 23 Fed. App'x 82 (2d Cir. 2001) (holding that, standing alone, a four-month gap between filing of the plaintiff's EEOC claim and the adverse employment action was insufficient to establish a causal connection); *see also Nicastro v. Runyon*, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999) ("Claims of retaliation are routinely dismissed when as few as three months elapse between the protected . . . activity and the alleged act of retaliation.").

Accordingly, summary judgment is granted as to Plaintiff's Title VII retaliation claim.

## V. Section 1981, NYSHRL and NYSCHRL Claims

Plaintiff also argues that his race discrimination claims are actionable under Section 1981, NYSHRL and NYCHRL. *See* 42 U.S.C. § 1981(a) ("[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."); N. Y. Exec. Law §§ 290 *et seq.* ("the state has the responsibility to act to assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life . . ."); N.Y.C. Admin. Code §§ 8-107 *et seq.* (it is unlawful "[f]or an employer or an employee or agent thereof, because of the . . . race, creed [or] color . . . of any person, . . . to discriminate against such person . . .").

Claims of race discrimination, retaliation and hostile work environment brought pursuant to Section 1981, the NYSHRL and the NYCHRL are analyzed under the same standards as those for Title VII claims. *See Schiano v. Quality Payroll Sys., Inc.*, 445 F. 3d 597, 609 (2d Cir. 2006); *Weinstock v. Columbia Univ.*, 224 F. 3d 33, 42 (2d Cir. 2000); *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F. 3d 62, 69 (2d Cir. 2000); *Choudhury v. Polytechnic Inst. of N.Y.*, 735 F. 2d 38, 44 (2d Cir. 1984); *Berry v. Empire Homes Servs. LLC*, 2010 WL 1037948, at *13 (E.D.N.Y. Mar. 18, 2010); *Harper v. New York City Housing Authority*, 673 F. Supp. 2d 174, 181 (S.D.N.Y. 2009); *Hurd v. New York Health & Hosps. Corp.*, 2007 WL 678403, at *11 (S.D.N.Y. Mar. 5, 2007), *aff'd* 2008 WL 5120624 (2d Cir. Dec. 8, 2008). Accordingly, because Defendants are entitled to summary judgment with respect to all of Plaintiff's claims under Title VII, Plaintiff's Section 1981, NYSHRL and NYCHRL claims also must be dismissed.

## CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment is granted and

the complaint is dismissed in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
       January 10, 2012

_____
/s/
DORA L. IRIZARRY
United States District Judge
